# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE DION GISPANSKI,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>P.D. BRAZELTON, Warden,<br><br>　　　　　　Respondent. | Case No. ED CV 13-2284 MWF (MRW)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

　　　This Final Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. The original Report has been modified at page 13 to reflect an aspect of Petitioner's objections.

**SUMMARY OF RECOMMENDATION**

　　　Petitioner Gispanski is serving a life sentence after his conviction for attempted murder. On federal habeas review, Petitioner contends that his trial

lawyer violated the Constitution by improperly advising Petitioner to reject a more lenient pretrial plea offer.

The Court appointed counsel to represent Petitioner in this federal proceeding. The Court also conducted an evidentiary hearing to delve deeper into Petitioner's allegations of attorney misconduct.

However, the Court factually concludes that the prosecutor did not make the plea offer that is the subject of Petitioner's after-the-fact complaint. Moreover, even if (a) there was such an offer and (b) the defense lawyer gave Petitioner bad legal advice regarding the potential plea, the Court concludes that there is insufficient proof that Petitioner would have accepted the plea offer at the time.

For these reasons, the Court recommends that the habeas petition be denied.

**FACTS AND PROCEDURAL HISTORY**

This case involves a December 2007 shooting after an altercation outside a bar. During the confrontation, Petitioner pulled out a handgun and shot the victim in the eye. In a recorded, Mirandized statement to the police, Petitioner admitted shooting the victim.

**State Court Trial and Appellate Proceedings**

Petitioner was originally charged with assault with a deadly weapon and gun use and great bodily injury enhancements. (Lodgment # 1, 1CT at 1 (felony complaint).) The prosecution later filed superseding charges that added attempted murder as the top count. (Id. at 7 (amended felony complaint), 56 (criminal information).) At trial in 2009, the jury convicted Petitioner of all charges and enhancements. The trial court sentenced Petitioner to a term of 32 years to life plus 10 years in state prison.

On direct appeal, the appellate court remanded the case for further proceedings regarding an allegation of juror misconduct. The trial court denied relief on remand. Petitioner appealed again, but his appellate lawyer filed a <u>Wende</u> brief signifying that there were no non-frivolous issues to raise.[1] The state appellate court affirmed the conviction on direct appeal. The state supreme court denied review without comment.

**<u>Federal and State Court Habeas Proceedings</u>**

Petitioner filed this federal action in late 2013. (Docket # 1.) Petitioner alleged that his trial lawyers provided ineffective assistance regarding two pretrial plea offers. Petitioner had not presented or exhausted his IAC claims in the state supreme court by the time he commenced the federal action. Based on then-existing law, the Court dismissed the unexhausted petition without prejudice.[2] (Docket # 24.) Petitioner subsequently sought habeas relief in the state supreme court. That court denied relief on Petitioner's IAC claims without comment. (Lodgment # 18.)

Petitioner then reinitiated this federal action to seek review of his now-exhausted constitutional claims.[3] After the completion of briefing on the merits of the claims in the federal action, the Court determined that it was entitled to conduct an evidentiary hearing on Petitioner's IAC claims (discussed below). (Docket # 68.) Petitioner's private attorney informed the Court that he

---

[1] <u>People v. Wende</u>, 25 Cal. 3d 436 (1979).

[2] Since then, the Ninth Circuit determined that a prisoner may properly request a stay of (rather than be required to dismiss) a habeas petition consisting entirely of unexhausted claims. <u>Mena v. Long</u>, 813 F.3d 907 (9th Cir. 2016).

[3] There was a procedural detour as the parties and the Court dealt with Petitioner's appeal of the district court's denial of the stay motion (later dismissed), the filing of a second action in this Court, and the resolution of Petitioner's motion for relief from the original dismissal order and judgment. (Docket # 27-58.) Bottom line – the Court properly reopened Petitioner's original habeas action to consider the exhausted claims.

3

would not be able to represent Petitioner at that hearing; the Court appointed the Federal Public Defender on Petitioner's behalf. (Docket # 67.)

### The Evidentiary Hearing

In September 2016, the Court conducted the evidentiary hearing. The Court heard testimony from Petitioner, three of the lawyers who represented him in the trial court, a private investigator who assisted the trial team, Petitioner's appellate lawyer, and the prosecutor who handled the matter. (Docket # 114, 116 (transcripts).)

The hearing proceeded only on Petitioner's second claim:[4] Did his trial lawyer (Haigh) provide unconstitutionally deficient performance in advising Petitioner to reject a pretrial plea offer? At issue was whether the prosecutor offered Petitioner the opportunity in early 2008 to plead guilty to an assault charge and enhancements – with a likely sentence of ten years in prison – instead of the far-more-serious attempted murder allegation.

### Key Testimony

Petitioner claimed that Haigh advised him to reject a plea offer to the assault charge. According to Petitioner, Haigh told him that the prosecution's offer was excessive because the gun-use enhancement did not apply to Petitioner. Haigh allegedly based this advice on Petitioner's lack of gang affiliation and other factors. (Docket # 64-1 at 4.)

Petitioner, a junior lawyer (Chapin) assisting Haigh, and the investigator (Krasco) testified that they heard Haigh: (a) convey the ten-year offer to Petitioner; and (b) advise Petitioner to reject it. (Docket # 114 at 34 (Chapin); 114 at 65-68 (Krasco); 116 at 63-65 (Petitioner).) Chapin and Krasco could not specifically recall when that discussion occurred. Chapin surmised that the

---

[4] By the time of the hearing, Petitioner voluntarily dismissed his IAC claim against the county public defender who originally represented him in the trial court. (Docket # 88.)

4

discussion was either at the preliminary hearing (April 25, 2008) or the hearing immediately before that (March 28). (Docket # 114 at 37; Lodgment 1 at 1CT 25-26 (superior court docket).) Krasco testified that he overheard the prosecutor make the offer to Mr. Haigh in a courtroom at some point before the preliminary hearing. (Docket # 114 at 66.)

Neither of the direct participants to the alleged plea discussion – Mr. Haigh or Deputy District Attorney Tahan – confirmed the existence of this plea offer. Mr. Haigh testified that he has suffered from health and memory problems in recent years. He acknowledged that he was unable to recall discussing any plea offer with the prosecutor or with Petitioner. (Docket # 114 at 92, 97.) The prosecutor (Tahan) vigorously denied making <u>any</u> plea offer to Haigh after the private lawyer entered the case. (Docket # 116 at 44, 50.)

However, the parties jointly agree that the prosecution <u>did</u> offer Petitioner the opportunity to plead guilty to the assault charge earlier in the case. In the period when a deputy county public defender (Cosgrove) represented Petitioner, the prosecutor offered to let Petitioner plead "open" to the then-pending assault charge and enhancements. (Docket # 116 at 49-50 (Tahan); 104-05 (Cosgrove).) The parties generally agree that the trial court would likely have sentenced Petitioner to a determinate term within a range of 7 to 12 years.[5] Petitioner did not accept this offer. The prosecutor unequivocally testified that he did not extend any plea offer after Petitioner rejected the open plea. (Docket # 116 at 53.)

---

[5] The lawyers described various calculations under the state penal code's triad system (low, mid, and high term sentences) that potentially applied to the charges. In other pretrial proceedings, the defense optimistically described this offer as a "seven-year" deal. (Docket # 30-2 at 45.) At the evidentiary hearing, the prosecutor suggested that the open plea likely would have resulted in a sentence of nine or ten years. (Docket # 116 at 10, 28.) The prosecutor's supervisor authorized a specific plea offer of 12 years, but the prosecutor's "open plea" offer could have led to a different result. (Docket # 116 at 27.)

5

The prosecutor's notes and a memorandum in the case file corroborate this sequence of events. According to the notes, the prosecutor originally "allowed the defense the opportunity to plea open to the court" to the assault and great bodily injury charges. The prosecutor wrote "Defense laughed" in response to the offer. The notes then explain "No offers after I amended" to add the attempted murder charge. (Evid. Hearing Ex. 16 at 165.)

Petitioner's appellate lawyer (Clark) testified briefly about her post-conviction representation of Petitioner. In 2012, Petitioner raised with Ms. Clark his claim that Haigh advised him to reject a plea offer. Petitioner also informed her that Haigh allegedly told him "prior to my jury trial" (although not necessarily during the alleged plea discussions) that the gun use enhancement did not apply to Petitioner. (Evid. Hearing Ex. 25 at 271.)

Ms. Clark explained that she spoke with both Haigh and Chapin about these issues. Haigh "categorically denied" recommending that Petitioner reject a plea offer; Chapin "had no recollection of such a conversation." (Docket # 116 at 117-18; Evid. Hearing Ex. 44.)

**The Timeline**

The key events and the relevant dates are therefore as follows (all dates in 2008):

- Petitioner charged with assault following arrest – January 10.
- Prosecutor and public defender discuss open plea to assault charge.
- Prosecution files amended complaint charging attempted murder – February 8.[6]

---

[6] The charging document was signed on January 29 and bears a court "filed" stamp dated February 15. However, the court's docket for February 8 indicates that the amended complaint was provided to the court and the defense on that date. (1CT at 4.) This is corroborated by a discovery motion that Chapin signed and filed on February 15. (1CT at 8.) The motion refers to the attempted murder charge, which shows that the defense knew about the existence of the upgraded charge before that date.

- Chapin appears for Petitioner in trial court, and public defender relieved of representation – February 8.
- Haigh and Chapin appear with Petitioner at arraignment – February 15.
- Preliminary hearing and finding of probable cause on attempted murder charge – April 25.

## LEGAL ANALYSIS

### Standard of Review

Federal courts typically conduct habeas corpus review of state criminal convictions under AEDPA's deferential standard of review. That standard allows a federal court to grant habeas relief only when a state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this standard, a federal court reviews the last decision of a state court for unreasonableness. Harrington v. Richter, 562 U.S. 86, 99 (2011). As a result, AEDPA presents "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, ___ U.S. ___, 134 S. Ct. 10, 16 (2013).

But there are circumstances – such as in this case – in which deferential AEDPA review is inapplicable to the merits of a prisoner's constitutional claim. When a federal court concludes that a state court decision was the result of unreasonable fact-finding under Section 2254(d)(2), that decision is no longer entitled to deferential review under AEDPA. A federal court "must then resolve the claim without the deference AEDPA otherwise requires." Panetti v.

Quarterman, 551 U.S. 930, 953 (2007). That leads to a de novo standard of review of the underlying constitutional allegations. Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008) (en banc) ("where the analysis on federal habeas, in whatever order conducted, results in the conclusion that § 2254(d)(1) is satisfied, then federal habeas courts must review the substantive constitutionality of the state custody de novo"); Johnson v. Laxalt, 624 F. App'x 492, 493 (9th Cir. 2016) ("We conclude that [state court's] determination of the facts was 'unreasonable.' 28 U.S.C. § 2254(d)(2). Accordingly, we review de novo Petitioner's first two Miranda-based claims.").

Earlier in the litigation, the Court made such a finding. (Docket # 68.) In a pretrial proceeding in the state trial court and on habeas review in the state supreme court, Petitioner presented cognizable claims of ineffective assistance against his lawyers. Both presentations were accompanied by credible declarations from Petitioner and another attorney who represented him in the criminal case. The state courts held limited additional proceedings for each claim. The trial court held a hearing on a motion to compel the prosecution to re-offer a plea proposal, while the supreme court ordered the Attorney General to file an informal response to Petitioner's post-conviction habeas submission. Yet, neither court conducted additional fact-finding on Petitioner's claims, and rejected each out of hand.

On federal review, the Court previously concluded that the state court fact-finding actions were unreasonable under Section 2254. Hibbler v. Benedetti, 693 F.3d 1140, 1146-47 (9th Cir. 2012); Docket # 68 at 3-4. The state courts did not fully or fairly develop the factually colorable claims of ineffective performance. On that basis, the Court concluded that AEDPA "pose[d] no further obstacle" to developing Petitioner's claims in federal court. Williams v. Woodford, 859 F. Supp. 2d 1154, 1161 (E.D. Cal. 2012) (Kozinski,

C.J., by designation). That led the Court to conclude that the door was open for further evidentiary proceedings in federal court. Hibbler, 693 F.3d at 1146.

Under settled law, the Court reviews Petitioner's ineffective assistance claim free from the constraints of AEDPA's deferential review. Panetti, 551 U.S. at 953; Frantz, 533 F.3d at 737. Review of the substantive constitutional claim will be de novo. In the absence of AEDPA deference to state factual findings, a habeas petitioner "carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Herrera v. Gipson, No. CV 12-508 DAD, 2016 WL 1267701 at *13 (E.D. Cal. 2016) (applying preponderance-of-evidence standard at federal evidentiary hearing); Sanders v. Davis, No. CV 92-5471 LJO (SAB), 2017 WL 2591907 at *10 (E.D. Cal. 2017) (same).

**Relevant Federal Law**

The Sixth Amendment of the Constitution guarantees a criminal defendant the right to effective assistance of a lawyer. Strickland v. Washington, 466 U.S. 668 (1984). To establish ineffective assistance under Strickland and its progeny, "a defendant must show both deficient performance by counsel and prejudice." Knowles v. Mirzayance, 556 U.S. 111, 112 (2009).

Deficient performance is defined as representation that falls below an objective standard of reasonableness. Strickland, 466 U.S. at 688. As to prejudice, a challenger must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Padilla v. Kentucky, 599 U.S. 356, 366 (2010) (quotation omitted). "Failure to satisfy either prong of the Strickland test obviates the need to consider the other." Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002).

A criminal defendant's right to competent legal advice extends to the plea negotiation process. A lawyer's failure to convey a plea offer to a client

9

can constitute ineffective assistance. Missouri v. Frye, 566 U.S. 133 (2012). Similarly, a lawyer who advises a client to reject a plea offer based on deficient legal advice may also violate the Constitution. Lafler v. Cooper, 566 U.S. 156 (2012). In this context, a defendant may demonstrate Strickland prejudice with proof that, among other things, "the defendant would have accepted the plea" and the resulting consequences. Lafler, 566 U.S. at 164.

However, a necessary prerequisite to a claim of ineffective assistance of counsel in evaluating a plea offer is that there must be a potential plea on the table. "If no plea offer is made," the question of a lawyer's alleged misconduct "simply does not arise" under the Sixth Amendment. Lafler, 566 U.S. at 168; see also Rise v. Glebe, 679 F. App'x 610, 611 (9th Cir. 2017) (denying Lafler claim involving non-existent plea deal; "No evidence was presented to the state court that the state prosecutor made or was willing to make a plea offer; that is, there was no plea agreement to lose."); Singh v. Arnold, No. CV 15-9261 ODW (MRW), 2016 WL 3751955 at *4 n.2 (C.D. Cal. 2016) (same).

**Analysis**

At the core of this case is Petitioner's contention that his lawyer (Haigh) gave him incredibly bad advice regarding a plea offer. Petitioner claims that Haigh told him not to plead to an assault charge with a gun use enhancement. Such an open plea (not binding on the trial court) would likely have resulted in a ten-year prison term. However, Petitioner contends that Haigh told him that the gun enhancement "didn't apply to me" because Petitioner was not a gang member, had no prior criminal history, and registered the gun properly. (Docket # 30-2 at 5.) Petitioner contends that he took the lawyer's advice and rejected the plea offer.

Instead, Petitioner took his case to trial. He was convicted of attempted murder and is now serving a life sentence in prison. The parties (including,

despite his admitted memory problems, Mr. Haigh) generally agree that the alleged advice regarding the application of the gun enhancement was wrong as a matter of California law (Cal. Penal C. § 12022.53). (Docket # 114 at 114.) No element of the gun-use charge involves proof of gang membership, criminal history, or gun registration. As a result, Haigh's faulty advice could constitute deficient performance under Strickland.

The parties sharply differ, though, about whether the prosecution in fact conveyed any plea offer to Mr. Haigh that would have allowed Petitioner to avoid a life term on the attempted murder charge. For Petitioner's ineffective assistance claim to have any merit, he would have to demonstrate that such a deal ever was on the table. Put another way, his right to habeas relief is, per Lafler, contingent on proof that the prosecutor actually extended the plea offer that the lawyer unreasonably advised Petitioner to decline. Lafler, 566 U.S. at 168.

\* \* \*

The Court concludes that Petitioner failed to carry his burden of proving by a preponderance of the evidence that the prosecutor made such an offer to Mr. Haigh. Lafler, 566 U.S. at 168; Rise, 679 F. App'x at 611. The Court starts from first principles. By the time Mr. Haigh entered the case in mid-February 2008, Petitioner had already been charged with attempted murder. He faced a mandatory sentence of at least 25 years to life in prison if convicted. For Petitioner to have received a plea offer of 10 years in custody on an assault charge, the offer either (a) occurred before Haigh entered the case (that is, before February 2008), or (b) would require the prosecutor to dismiss the attempted murder count to allow a guilty plea to the lesser charge.

That's a foundational problem. Petitioner obviously cannot establish that Mr. Haigh was ineffective based on events that happened before the lawyer even

became involved in the case. The procedural record makes clear that Haigh was not Petitioner's lawyer when Petitioner faced solely the assault charge: Haigh and Chapin came into the case <u>after</u> the top charge increased to attempted murder in February 2008 (situation (a)).

And there's no evidence that the prosecutor ever offered to abandon the attempted murder charge in the short period of time after the charging document was amended and before the preliminary hearing in April 2008 (situation (b)). The prosecution had a very solid case: a crime of shocking and graphic violence, available witnesses to testify that Petitioner was the shooter, and a Mirandized, recorded confession from the defendant. Petitioner offers no compelling explanation why the Riverside County District Attorney would have agreed to any plea proposal that involved walking away from a serious charge immediately after adding it to the case. To the contrary, the mere procedural context of the alleged plea offer weighs heavily against it ever existing. (Docket # 116 at 55.)

Turning to the testimony adduced at the evidentiary hearing, the Court finds little that establishes that the prosecution made the alleged plea offer to Mr. Haigh. Mr. Tahan testified that he was the line prosecutor who handled the case from the charging phase through trial and sentencing. He acknowledged making an early plea offer to the assault charge to Petitioner. The prosecutor testified that he conveyed that offer to DPD Cosgrove, but it was rejected (perhaps derisively, based on the comment in his notes that the defense "laughed.") The Court found Mr. Tahan's statements to be convincing and sensible.

What happened next also rings true. With his solid case in hand and the assault plea rejected, Tahan amended the complaint to add attempted murder in February 2008. By that time, a new set of private lawyers was in the case for

Petitioner, which suggested Petitioner's intention to take the case to trial. Mr. Tahan testified that he made no further plea offers to the defense. His notes say the same thing. More specifically, he denied making any plea offer to Mr. Haigh, much less one that involved dismissing the attempted murder charge shortly after an earlier, unsuccessful plea discussion to a lesser charge.

Based on his in-court testimony, I believe him. There's no reason to believe that Tahan made a later, lenient offer to Petitioner after the prosecution filed the heavy attempted murder charge. His testimony was logical, and corroborated by Cosgrove and Mr. Tahan's own notes. Moreover, it simply made sense.

By contrast, the Court had real trouble believing either Mr. Chapin or Mr. Krasko regarding the existence of the plea offer. Both men gave perfunctory, unconvincing testimony at the evidentiary hearing regarding the alleged plea. Mr. Chapin claimed that he was present when Haigh presented the plea offer to Petitioner. However, he had little insight into the details of the offer or Haigh's advice about it. Krasko's testimony was even less insightful and equally as unpersuasive.

Chapin's testimony was also thoroughly undermined by the investigative work that Ms. Clark conducted and recorded several years earlier. Chapin told her that he didn't remember any discussion with Haigh and Petitioner about a plea. (Docket # 116 at 117-18; Evid. Hearing Ex. 44.) His later statement (there *was* a plea discussion, and Chapin remembered it fairly clearly) was entirely inconsistent with what he told Ms. Clark. Notably, neither Chapin nor Krasko could point to any contemporaneous note, letter, recording, or other evidence to back up their statements about the supposed plea offer. As a factual matter, the Court rejects the testimony of these witnesses.

Petitioner himself testified about his discussion with Haigh about the plea. His own credibility is obviously of central importance. But based on the Court's observations of Petitioner's appearance, tone, and presentation at the evidentiary hearing, the Court has real doubts about the honesty of his testimony.

Added to that are his absolutely contradictory statements about a different plea issue with his former appointed lawyer, Mr. Cosgrove. In a sworn declaration submitted to the trial judge (as part of a pretrial effort to get the original plea offer back on the table), Petitioner stated that "At no time did my Public Defender ever inform me [ ] that I could plead guilty to the existing complaint." (Docket # 30-2 at 46.) However, at the evidentiary hearing, Petitioner completely abandoned his earlier statement. Petitioner admitted that Mr. Cosgrove <u>did</u> present an offer from the prosecution to plead guilty to the assault charge before he was charged with attempted murder. (Docket # 116 at 61.)

The Court recognizes that Petitioner and his lawyers now want to qualify his previous statements. Petitioner contends that he did not know about an offer to plead to a specific "7-year deal," while he later stated that he was always aware of an open, ten-year plea offer from Mr. Cosgrove. (Docket # 122 at 39.) The Court rejects that post hoc argument. There's no convincing evidence supporting Petitioner's now-nuanced position about his discussions with the public defender about competing plea offers. To the contrary, a plain understanding of Petitioner's statements is that he originally denied that Cosgrove told him about a pretrial plea offer, but walked away from that false statement when he was on the witness stand. (Petitioner dismissed his ineffective assistance claim against DPD Cosgrove shortly before the evidentiary hearing started. (Docket # 87.)) Petitioner's shifty arguments – and empty accusation against DPD Cosgrove – strongly detract from his credibility.

More bad news for Petitioner. In a different declaration, he swore that he recalled that his interaction with Mr. Haigh about the second alleged plea offer occurred "on or about Feb. 15 to Mar. 15, 2008." (Docket # 30-2 at 5.) The specificity of that recollection is eye-catching. However, it is directly at odds with the recollection of Mr. Chapin, who placed the timing of the alleged discussion to one of two dates considerably later than these. I didn't find either witness's statement to be particularly compelling, but the date conflict was confusing and materially impacted Petitioner's believability.

Petitioner has not carried his factual burden of proving that the prosecution made a plea offer to him that Haigh improperly advised Petitioner to reject. That is sufficient to recommend denial of the habeas claim.[7]

\* \* \*

However, even if the offer did exist and the lawyer misadvised Petitioner, the Court is also factually unconvinced that this prejudiced Petitioner. Padilla, 599 U.S. at 366; Rios, 299 F.3d at 805.

The weight of the evidence regarding Petitioner's state of mind in early 2008 strongly suggests that he was unlikely to accept any plea offer that would require him to serve a lengthy custodial sentence. The public defender who met with Petitioner when he rejected the original assault plea described Petitioner as having "some level of defiance" at pleading guilty; "it just didn't seem like it was going to be a quick plea at that point." (Docket # 116 at 106, 108.)

---

[7] Petitioner offers other snippets of evidence to cobble together a scenario of ongoing discussions between the prosecutor and defense. Petitioner points to court forms filed in 2008 in which the parties requested that hearings be continued because a "potential dispo" was being discussed. (Docket # 122 at 28.) Similarly, at a court hearing in 2009, Haigh cryptically stated that he previously received and rejected a "different offer" from the prosecutor than that presented to the public defender in early 2008. (Id.) The Court concludes that these events do not convince it by a preponderance of the evidence that the prosecution offered an assault plea to Petitioner through Haigh after the lawyer entered the case.

Similarly, the Attorney General presented a series of recorded jail calls between Petitioner, his girlfriend, and his mother from early 2008. The gist of those discussions was that Petitioner was unwilling to agree to a lengthy prison term like 10 years. He was far more interested in serving a nominal sentence of three years after shooting a man in the eye. (Evid. Hearing Ex. 35 at 1; 36 at 20, 37.)

Petitioner's actions and statements at the time when he really was offered the opportunity to plead to the assault charge are beyond dispute: Petitioner was not interested in pleading guilty. As a result, there is no reason to believe that he would have accepted the same consequence several weeks later – save for the alleged advice of his new lawyer to reject that very outcome. Petitioner has not convinced the Court that it was at all likely that he would have pled guilty had he been properly advised about an alleged plea offer. Lafler, 566 U.S. at 164. In the absence of any proof of prejudice, Petitioner is not entitled to relief on his ineffective assistance claim.

**CONCLUSION**

On paper, this case initially presented a potentially shocking case of attorney misconduct. Petitioner claimed that his lawyer advised him to reject a favorable plea offer based on flawed legal reasoning. Petitioner backed up that claim in his habeas petition with a sworn declaration from his other trial lawyer. Those eye-catching allegations warranted further inquiry in a habeas proceeding.

And so Petitioner had his hearing. But after considering the thin nature of Petitioner's claims, the robust presentation from the Attorney General, the testimony of the players, and the corroborating evidence provided by the district attorney and Petitioner's appellate lawyer, the Court concludes that Petitioner's claims are factually without merit. Petitioner's habeas claim should be rejected.

IT IS THEREFORE RECOMMENDED that the District Judge issue an order: (1) accepting the findings and recommendations in this Report; (2) directing that judgment be entered denying the Petition; and (3) dismissing the action with prejudice.

Dated: August 18, 2017

_____
HON. MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE